124 F.3d 215
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Troy Lee WASHINGTON, Petitioner-Appellant,
v.
Joe DEMORALES, Executive Director, Respondent-Appellee.
 No. 96-55275.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted August 8, 1997.
Decided Aug. 28, 1997.
 
 Appeal from the United States District Court for the Southern District of California, No. CV-94-01413-JSR; John S. Rhoades, District Judge, Presiding.
 Before: BROWNING, BRUNETTI, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We examine de novo the district court's decision to deny Washington's habeas petition, and apply the standards that governed habeas relief prior to the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. See Jeffries v. Wood, 114 F.3d 1484, 1495 (9th Cir.1997) (AEDPA not to be applied retroactively); Lindh v. Murphy, 117 S.Ct. 2059, 2063 (1997).
 
 
 3
 The State concedes that Washington asserted his right to remain silent during police interrogation. The California Court of Appeal concluded that the videotaped confession thereafter avulsed from him by the police was involuntary and improperly admitted in evidence. The Court of Appeal concluded that the police utterly failed to "scrupulously honor" Washington's constitutional rights as embodied in Miranda. Michigan v. Mosley, 423 U.S. 96, 104 (1975). A federal magistrate judge agreed, as did the district court from which this appeal is taken. However, the district court concluded, as did the Court of Appeal, that the erroneous admission of the involuntary confession was harmless.
 
 
 4
 The sole issue on appeal is whether the erroneous admission of Washington's videotaped confession was harmless.
 
 
 5
 On collateral review, an error is not "harmless" if it "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). In determining whether an error is harmless, "the question is not 'were they [the jurors] right in their judgment, regardless of the error or its effect on the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision.' " Wade v. Calderon, 29 F.3d 1312, 1322 (9th Cir.1994) (quoting Brecht, 507 U.S. at 642-43 (Stevens, J., concurring)). An error is not harmless if we are "in grave doubt" as to whether the error had "substantial and injurious effect or influence." O'Neal v. McAninch, 513 U.S. 432, 435 (1995).
 
 
 6
 The videotaped confession was powerful and convincing evidence of Washington's guilt, not only of the crimes charged but also of the rape special circumstance. The inadmissible confession described the crimes in greater and more graphic detail than any other evidence offered at trial. It provided a unique insight into Washington's motive for committing the crimes and his state of mind in doing so. Indeed, the state trial judge who denied the defense's motion for judgment of acquittal said: "As to the special circumstance, the critical evidence really comes, I think, from the defendant's statement although there is support from the other evidence in the case."
 
 
 7
 Moreover, the prosecutor carefully pointed out to the jurors that Washington's statements in the videotaped confession had a particularly probative evidentiary significance:
 
 
 8
 As far as the substance of his confession and what he says occurred or his admissions, you can certainly consider those on the issues of deliberation and premeditation.
 
 
 9
 Mr. Thoma also said that the defendant's statements are uncontroverted and, in large measure, I cannot disagree with that; but I want you to understand what that means. I mean, the only person who could basically, with respect to the facts that occurred within that condominium that night, dispute it is Miss Barksdale, and Miss Barksdale isn't here.
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 I think he was being credible for the most part when he made that statement. That doesn't mean that he doesn't have some impetus to hide some factors, for example, whether he actually intended to rape her when he went over there. That's certainly a fact that he may wish to keep to himself, but that's a judgment you have to make based on the evidence.
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 Now, that, Ladies and Gentlemen, as to the circumstantial evidence is what that instruction is talking about. But you got to stop and think for a minute. When somebody is saying on the issue of intent what was the intent involved, what that person. namely, Mr. Washington tells you what his intent is, not circumstantial evidence. He is the only person that can give you direct evidence as I am on what I intend to do and you are on what you intend to do.
 
 
 16
 That is not circumstantial evidence. That is direct evidence, and that instruction does not apply to it. Mr. Washington on what his intent was, direct evidence, not circumstantial evidence. And that instruction does not apply to it.
 
 
 17
 * * *
 
 
 18
 * * *
 
 
 19
 This is where circumstantial evidence does apply because you're making an inference on that portion of it. The only direct evidence is what Mr. Washington tells you.... The only direct evidence you will ever have on the issue of intent is what the individual himself says, but the circumstantial evidence instruction does not apply to direct evidence.
 
 
 20
 In other words, Mr. Washington's statements as to his intent you can consider on their full value. You don't have to weigh them, either two reasonable intents, he's telling you. If you believe them, then that's all you need. There's no balancing acts. It's a question of whether you believe him or not. That's it. It's direct evidence.
 
 
 21
 1/31/92 R.T. 266-269 (emphasis added).
 
 
 22
 The confession was the backbone of the prosecution's closing argument. Referring to express malice, the prosecutor argued:
 
 
 23
 What does the defendant say to you?
 
 
 24
 Basically what he says in several different ways in several different times in the interview: if you don't stop[,] I'm going to have to kill you. He says: I didn't want to, didn't want to do it. But when she finally wouldn't stop, he killed her. He tells you himself. That is express malice. That is murder.
 
 
 25
 Id. at 200 (emphasis added).
 
 
 26
 As to implied malice, the prosecutor argued:
 
 
 27
 He knew what the danger was. That's the method he was using and applying on Miss Barksdale when he's telling her: stop it or I'm going to kill you. He clearly understood.
 
 
 28
 Id. at 201.
 
 
 29
 To prove that the murder occurred during the commission of rape, the prosecutor argued:
 
 
 30
 It must be a continuous course of conduct, one continuous transaction, which is clearly all you have here by Mr. Washington's own statement. This is a single event, a single course of conduct, a single transaction. Therefore, he kills during the commission of rape.
 
 
 31
 Now, even if this is not a continuous transaction, if the killing was to facilitate escape or avoid detection, that would also apply....
 
 
 32
 Do we have circumstances that suggest that here? You bet. That's basically, ladies and gentlemen, I submit to you why he killed her; it was the only way he was going to get out of there. He could not stop the conduct. He killed her to facilitate his escape and avoid detection. She's trying to pull his mask off. That's the reason he ends up doing it.
 
 
 33
 Id. at 204-05 (emphasis added).
 
 
 34
 As to the degree of murder, the prosecutor argued:
 
 
 35
 We're not talking about a particularly short period of time here; we're talking about one or two hours, depending on which particular statement you're looking at in his, that is, Mr. Washington's statement....
 
 
 36
 The crucial thing is what was going through his mind. He tells you almost in every breath throughout the statement: stop fighting me or I'm going to kill you. He doesn't want to do it, but he's weighing the pros and cons of the result as he's going through the acts. And he finally does it. And that's the truth of the circumstances here. And that, I submit to you, ladies and gentlemen, is a willful, deliberate, and premeditated murder, within the meaning of the law. That is a first degree murder.
 
 
 37
 The second bases upon which you could find first degree murder is murder, and I put with implied malice, that was by means of lying in wait....
 
 
 38
 I'm not going to go back through what I said before, but that's exactly what Mr. Washington was doing here. He said that he went in to hurt her. This is a murder at minimum with implied malice that was accomplished by means of lying in wait.
 
 
 39
 Id. at 209-10.
 
 
 40
 The heart of the prosecution's rebuttal was a statement-by-statement verbatim recital of incriminating parts of Washington's confession to establish each element of the crimes. Id. at 271-76. Virtually no properly admitted evidence was mentioned. We note that a written transcript of the confession was also admitted in evidence and was presumably in the jury's hands.
 
 
 41
 The prosecutor relied upon Washington's demeanor in the videotaped confession as establishing his credibility:
 
 
 42
 The truth is, ladies and gentlemen, that he probably didn't want to have to kill her. Indeed, if you watch his confession, I submit to you when he finally gets it off his chest and tells you what happened, that you have an impression of credibility in much of his account. It's what makes tragedies all the way around. Indeed, his actual decision to kill comes only at the end of the struggle when he's finally realized that he isn't going to get out of there unless he does it.
 
 
 43
 Id. at 207 (emphasis added). This point was reemphasized in rebuttal:
 
 
 44
 I've already told you what my opinion is. And if you watched that interview, I don't really know how you could come to a different conclusion.
 
 
 45
 I think he was being credible for the most part when he made that statement.
 
 
 46
 Id. at 267 (emphasis added).
 
 
 47
 Strong circumstantial evidence linked Washington to the crime, but the inadmissible confession was by far the most influential proof before the jury and inevitably had a substantial and injurious effect on the jury's verdict. We are mindful of the Supreme Court's observation that
 
 
 48
 [a] confessions is like no other evidence .... '[c]onfessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so.' While some statements by a defendant may concern isolated aspects of the crime or may be incriminating only when linked to other evidence, a full confession in which the defendant discloses the motive for and means of the crime may tempt the jury to rely upon that evidence alone in reaching its decision.
 
 
 49
 Arizona v. Fulminante, 499 U.S. 279, 296 (1991) (Citations Omitted). Justice Kennedy reminds us that when we conduct a harmless error analysis with regard to an inadmissible confession, we must appreciate "the indelible impact" it may have on a jury. Id. at 313 (Kennedy, J., concurring). Here, the erroneous admission of the confession destroyed any possibility of a fair trial. Cf. Pope v. Zenon, 69 F.3d 1018, 1025 (9th Cir.1996) (inadmissible confession held not to have any substantial or injurious effect or influence on a trial).
 
 
 50
 REVERSED and REMANDED with instructions to grant the writ.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts in this circuit except as provided by Ninth Circuit Rule 36-3