

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-18-2003

# Tucker v. Varner

Precedential or Non-Precedential: Non-Precedential

Docket No. 00-3600

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Tucker v. Varner" (2003). *2003 Decisions.* Paper 48.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/48

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 00-3600
_____

RICK NEIL TUCKER,

*Appellant*

v.

BEN VARNER, Acting Supt.

_____

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 97-cv-00109)
District Judge: Honorable Sean J. McLaughlin

_____

Argued: May 19, 2003

Before: SCIRICA, *Chief Judge*, NYGAARD and BECKER, *Circuit Judges*

(Filed      December 18, 2003            )

MARY GIBBONS, ESQUIRE (Argued)
600 Mule Road
Holiday Plaza III
Toms River, New Jersey 08757
        *Counsel for Appellant*

PAULA DiGIACOMO, ESQUIRE (Argued)
Crawford County First Assistant District Attorney
Crawford County Courthouse
Meadville, Pennsylvania 16335
        *Counsel for Appellee*

—————————————————————

OPINION

—————————————————————

BECKER, *Circuit Judge*.

Rick Neil Tucker appeals from an order of the United States District Court for the Western District of Pennsylvania denying his petition for a writ of habeas corpus on the ground that his claim for relief was meritless. Tucker contends that the state trial court violated his Due Process rights and Sixth Amendment rights under the Confrontation Clause by failing to give a cautionary instruction prohibiting consideration of the co-defendant's confession as to Tucker's guilt or innocence, and by affirmatively inviting the jury to consider the co-defendant's confession against Tucker, the two issues on which we granted a Certificate of Appealability ("COA"). We conclude that the trial court's affirmative jury instruction violated Tucker's constitutional rights and that the error was not harmless as to one of the two robberies at issue. Therefore, we will affirm the District Court's order in part and reverse in part, and remand with instructions to grant the writ.

## I. FACTUAL AND PROCEDURAL HISTORY

In March, 1988, Tucker and his co-defendant, Eric Hall, both of whom chose to proceed *pro se* at trial, were convicted by a jury in state court of two counts each of robbery, conspiracy to commit robbery, and commission of a crime with a firearm, and one count of reckless endangerment, for the armed robberies of two convenience stores in Meadville and

2

Conneaut Lake, Pennsylvania, committed on June 13-14, 1987. Tucker and Hall were arrested on June 16, 1987, in Mercer County, Pennsylvania. Police seized from the car they were driving two stocking masks, a pair of women's Queen-size panty hose with a leg cut out, six guns, a white hat and a baseball cap, a bank statement in Hall's name, a prescription medication bottle with Tucker's name on it, and a copy of a Meadville Tribune article reporting the convenience store robberies. After his arrest, Tucker signed a waiver of *Miranda* rights form and admitted to police that the "stuff" in the car was his and that the car was leased by another person for his and Hall's use. Hall also gave a Mirandized statement to police that corroborated Tucker's admissions.

The Meadville robbery occurred at approximately 11 p.m. on June 13, 1987. When a convenience store employee, Donna Baine, was interviewed by police immediately after the robbery, she could not describe one robber in any detail because he had a stocking mask on and stayed farther away from her. She could only tell the police that the man was heavier than the other robber, and was wearing a white stocking mask, a black hat, and jean-type clothing. She gave a description of the other robber, the man who had pointed a gun at her and told her to get the money out of the cash register, as being of slight build, about 5'7" tall, wearing a dark hat pulled over his face and a white stocking mask, under which she could see dark glasses and a thick mustache. When Baine saw news coverage from her home of Tucker's and Hall's arrest, she told her husband that they "looked like" the men who had robbed her. On cross-examination, Baine admitted that a few days after the newscast of the

3

arrest, police approached her to make a photo identification, which she was unable to do. Baine did not make a positive in-court identification. Nor was she able to positively identify the gun used. However, she was able to identify the stocking mask and a black hat with a white brim, both of which had been seized from the car Tucker and Hall used.

The robbery of the Conneaut Lake convenience store occurred at approximately 1:45 a.m. on June 14, 1987. Both at trial and in a "fill-in-the-blanks" report she completed for police within a day of the robbery, a convenience store employee, Laura Collins, described a man fitting Tucker's description as the robber who wielded the gun and demanded the money at the Conneaut Lake store. She said that he was 5'6", 140 lbs., with light colored, reddish-blond hair and a mustache, and he was wearing a white hat. Tucker wore no mask; Hall did. Collins described Hall as 5'7", with a dark mustache, shoulder-length dark hair, and dark glasses, who wore a baseball cap. Collins also saw news coverage from her home of Tucker's and Hall's arrest and positively recognized them as the men who robbed her.

Shortly thereafter, Collins positively identified Tucker and Hall from separate police photo arrays, without hesitation. Collins made a positive in-court identification of Tucker and Hall as the men who robbed her store. She also positively identified a stocking mask, the hat that Tucker wore, and the gun used in the robbery, all of which were items seized from the car. The defendants established that a state police report of an interview with Laura Collins immediately after the robbery, related that Collins had identified Hall as the robber with the gun who demanded money from her, not Tucker. On cross-examination, the state

4

trooper clarified that his report was in error because Collins had described Tucker as the gunman in a "fill-in-the-blanks" report completed on the same day.

On the night of the robberies, Hall and Tucker came back to the apartment of Theresa Williams, Hall's girlfriend at the time. While Tucker was in the living room, Hall found Williams near the bathroom and showed her "a handful of money" and said "look what I got". "I asked him, 'what did you do, rob a bank or something? And he said 'No.'" Williams then received a phone call from Hall after his arrest in Mercer County. She asked him "if he had done the crimes and stuff, and he said yeah, that he did. I asked him why, and he said he needed the money for rent." On cross-examination, Williams admitted that Hall never told her that Tucker had committed a crime and that Hall did not tell her specifically what crimes he had committed.

In his closing argument, Tucker reminded the jury that "Eric did not tell her [Theresa Williams] that he had committed these robberies." The prosecutor's closing argument characterized Theresa Williams' testimony about Hall's confession without making any reference to Tucker.[1] "She asked him [Hall] did you commit those crimes and he told her yes. Because I needed the money. My rent in Pittsburgh is too high. I did not have the money." He then told the jury that "he [Hall] essentially confessed to her. And you're allowed to take that into consideration whether or not Hall is guilty of the crimes charged."

---

[1] In his opening remarks, the prosecutor told the jury that they would be hearing from Eric Hall's girlfriend, Theresa Williams, about a phone call Hall made to her in which he "admitted he committed these crimes." He made no reference to Tucker.

In its jury charge on credibility, the trial court described the testimony of Theresa Williams, whom he referred to as Theresa "Hall." "You'll recall Theresa Hall a girlfriend of Mr. Hall. She said about this time, I'm not sure of the exact date, she asked him, "Did you commit the crime?" and she said he told her yes, because they needed some money for rent. Is that credible testimony? That's for you to decide." The trial court gave no instruction (and none was requested) cautioning the jury to consider Hall's confession as to Hall's guilt or innocence only. However, Tucker raised an objection to the trial court's characterization of Williams' testimony, prompting the trial court to issue another jury instruction as follows:

> And here again, I'll get into trouble with my poor note-taking. We have a dispute about what Theresa Hall said. And I referred to my notes and told you I was a poor note-taker. And the defendants say that I summarized her testimony incorrectly. Well, I gave you my best recollection of it, but whatever Theresa Williams said, Mr. Tucker said, and his recollection was that she does not recall Hall ever saying that Tucker had anything to do with it and he doesn't recall Theresa Hall saying that when Mr. Hall talked to her, he was talking about these specific crimes. She asked, "Why did you commit those crimes?" and that the defendant didn't show that she was referring to these particular crimes here. I leave that to you. *Your recollection of what Theresa said and how it does or does not implicate one or either of the defendants is for you.*

Following the trial, Tucker was sentenced to five to ten years for each robbery, the sentences on the Conneaut Lake robbery to run consecutively to the Meadville robbery sentences. Tucker appealed to the Pennsylvania Superior Court, claiming, among other things, that the trial court erred when it affirmatively instructed the jury that it could consider the statement of the co-defendant Hall in determining Tucker's guilt and when it failed to caution the jury against using Hall's statement to draw adverse inferences against Tucker.

6

The Superior Court affirmed the conviction without deciding Tucker's affirmative jury instruction claim, and the Pennsylvania Supreme Court denied allowance of appeal. Tucker did not seek post-conviction relief.

On April 21, 1997, Tucker filed a habeas petition under 28 U.S.C. § 2254, challenging his sentence on fifteen grounds, including the afore-mentioned jury instruction claims. The Magistrate Judge determined that Tucker's § 2254 petition was not barred by AEDPA's statute of limitations, and that the claims were exhausted. The Magistrate Judge reviewed Tucker's claims on their merits, without a hearing, and concluded that none of them rose to the level of a constitutional violation.[2] Thereafter, the District Court, adopting the Magistrate Judge's Report, denied Tucker's § 2254 petition.

Tucker timely appealed *pro se* and filed a request for a Certificate of Appealability under 28 U.S.C. § 2253(c)(1). Although Tucker sought relief on all fifteen grounds, we granted the certificate only on the above-referenced jury instruction claims and directed the parties to address harmless error. Counsel was appointed to represent Tucker on appeal. Because we find the trial court's affirmative jury instruction to be reversible error, we need not reach Tucker's claim regarding the failure to issue a cautionary instruction.

## II. JURISDICTION AND STANDARD OF REVIEW

We have appellate jurisdiction under 28 U.S.C. § 1291. Our review of the District

---

[2] Although the Magistrate Judge considered Tucker's claim regarding the admissibility of Hall's statement under *Bruton v. United States*, 391 U.S. 123, 135 (1968), she did not address Tucker's jury instruction claims at all.

7

Court's decision is plenary, *Marshall v. Hendricks*, 307 F.3d 36, 50 (3d Cir. 2002), under the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). Any claim that was adjudicated on the merits in a state court proceeding does not warrant federal habeas corpus relief unless such adjudication (1) resulted in a decision that was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. In Tucker's case, however, no state court addressed the merits of his affirmative jury instruction claim. When a state court has not reached the merits of a fairly presented and properly preserved claim, AEDPA's deferential standards of review do not apply. *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). Instead, the federal court must conduct de novo review over pure legal questions and mixed questions of law and fact. *Id.* (*citing McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999)).

## III. DISCUSSION

Tucker claims that the trial court mis-characterized Hall's statement as stating that Hall committed the crimes because "they" needed the money for rent, thereby implicating Tucker in the motive to rob, and then compounded the error when it impermissibly gave the jury carte-blanche to consider Hall's statement against Tucker. Tucker contends that the trial court's instruction violated bedrock principles of confrontation and due process as articulated

8

in a host of Supreme Court cases, including *Bruton v. United States*, 391 U.S. 123 (1968) and *Richardson v. Marsh*, 481 U.S. 200 (1987). The Commonwealth acknowledges that "[i]f the statement that Hall made to Williams said 'we committed the crimes' or 'we needed money for rent' or 'I and another guy needed money for rent,' then perhaps *Bruton* would apply." Without citing any caselaw, the Commonwealth argues that the trial court did not err by instructing the jury to consider Hall's statement as evidence against both defendants because "[t]he only basis for a limiting instruction to the jury would be the existence of a *Bruton* statement," and Hall's statement is not a *Bruton* statement. But the Commonwealth is clearly wrong in arguing that the trial court could instruct the jury to use Hall's confession against Tucker.

In *Bruton*, the Supreme Court held that the admission into evidence of a co-defendant's confession violates the defendant's rights under the Confrontation Clause of the Sixth Amendment when the confession incriminates the defendant as well. *Bruton*, 391 U.S. at 135-136. The Court's subsequent opinion in *Richardson*, however, clarified that the co-defendant's confession must implicate the defendant directly to give rise to a *Bruton* violation. *Richardson*, 481 U.S., at 208. In this case, absent the affirmative instruction, there is no doubt that Hall's statement, standing alone, did not directly implicate Tucker. In fact, Tucker conceded in the District Court that Hall's statement was not a classic *Bruton* statement. *See* Habeas Memorandum of Law, 96. However, while it may have had no such intention, the trial court's instruction essentially directed the jury that it could choose to treat

9

Hall's statement as directly implicating Tucker.[3]  The trial court basically left it to the jury to decide whether Hall's confession implicated Tucker or not, a point Tucker makes in his Reply.  For these reasons the trial court's instruction allowing the jury to use Hall's statement or any adverse inferences drawn therefrom as evidence of Tucker's guilt violates *Bruton*.  In other words, on *de novo* review, the trial court erred as a matter of law.

## IV.  HARMLESS ERROR

Having concluded that the trial court's affirmative instruction was an error of constitutional dimension, we must now determine whether the error was harmless.  The Supreme Court has held that its "harmless beyond a reasonable doubt" standard is inapplicable in the context of habeas corpus proceedings, as contrasted with direct review. *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  Moreover, we have held that the *Brecht* standard for determining harmless error, rather than the reasonable doubt standard, applies in habeas cases where, as here, no state court has evaluated the claim.  *See Hassine v. Zimmerman*, 160 F.3d 941, 950-953 (3d Cir. 1998).  "[C]onstitutional trial error is not harmless if the court is in 'grave doubt' as to whether the error had a substantial and injurious effect or influence in determining the jury's verdict."  *Id.* at 955 (*quoting O'Neal v. McAninch,* 513 U.S. 432, 436 (1995)).  "'Grave doubt' exists when, 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness

---

[3]  Tucker correctly points out that Hall's statement was not otherwise admissible as a statement of a co-conspirator because it was made post-arrest and was therefore not made in furtherance of a conspiracy.

of the error.'" *Id.* Sufficiency of the evidence is not the test. Rather, it is whether the error had a substantial influence on the verdict despite sufficient evidence to support the result apart from the error. Our review of the record before us convinces us that the trial court's affirmative jury instruction rises to this level as to the Meadville robbery, but not the Conneaut Lake robbery.

At trial, no one positively identified Tucker as one of the robbers in the Meadville robbery. The Meadville employee, Donna Baine, interviewed by police immediately after the robbery, could not describe one robber in any detail because he had a stocking mask on and stayed farther away from her. When Baine saw news coverage from her home of Tucker's and Hall's arrests, she did not identify them as the robbers, only that they "looked like" the men that robbed her. Baine was unable to make a positive photo identification of either defendant a few days after the arrest and did not make a positive in-court identification. Nor was she able to positively identify the gun used. Even though there may have been sufficient circumstantial evidence to convict, without any positive identification of Tucker as the robber in the Meadville case it is highly likely that the jury relied on the trial court's invitation to use Hall's confession in determining Tucker's guilt in the Meadville robbery. In our view, the trial court's constitutional error had a prejudicial and injurious effect on the jury verdict.

In stark contrast, the Conneaut Lake employee, Laura Collins, described a man fitting Tucker's description as the robber who wielded the gun and demanded the money at the

11

Conneaut Lake store, both at trial and in a "fill-in-the-blanks" report she completed for police within a day of the robbery. Tucker wore no mask; Hall did. Collins also saw news coverage from her home of Tucker's and Hall's arrests and positively recognized them as the men who robbed her. Shortly thereafter, Collins positively identified Tucker and Hall from separate police photo arrays, without hesitation. Collins made a positive in-court identification of Tucker and Hall as the men who robbed her store. She also positively identified a stocking mask, the hat that Tucker wore, and the gun used in the robbery, all of which were items seized from the car Tucker and Hall were driving when they were arrested. Because the positive eyewitness evidence directly implicated Tucker in the Conneaut Lake convenience store robbery, we conclude that the affirmative jury instruction had de minimis influence, if any, on the jury verdict.

## V. CONCLUSION

For the foregoing reasons, the order of the District Court denying Tucker's petition for a writ of habeas corpus will be affirmed in part and reversed in part. We will remand this matter with directions to grant the writ of habeas corpus on Tucker's convictions for the Meadville robbery. The Commonwealth of Pennsylvania may retry Tucker. The writ will be issued conditioned upon a retrial within 180 days from the date on which the District Court enters its order.

_____

TO THE CLERK:

   Please file the foregoing opinion.


                              /s/ Edward R. Becker
                              Circuit Judge