51 F.3d 279
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Kevin Undre DYKES, Petitioner-Appellant,
v.
Robert BORG, Warden; Attorney General of the State of
California, Respondents-Appellees.
 No. 94-55111.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 3, 1994.
Decided March 30, 1995.
 
 1
 BEFORE: D.W. NELSON, NORRIS, and BOGGS,* Circuit Judges.
 
 
 2
 MEMORANDUM**
 
 
 3
 Kevin Dykes appeals the district court's denial of his petition for writ of habeas corpus. Dykes was convicted in December 1986 of two counts of attempted murder and one count of second-degree murder. We affirm the district court's denial of Dykes's habeas petition.
 
 
 4
 Dykes claims in his habeas petition that his conviction should be vacated and a new trial granted because he was prosecuted based on evidence that the prosecution either knew or should have known was false. He also claims that material information showing that several witnesses were unreliable was withheld from the defense, in violation of Brady v. Maryland, 373 U.S. 83 (1963).
 
 
 5
 The Supreme Court has held that a new rule of criminal procedure will not be applied to cases that have become final before the announcement of the rule. Teague v. Lane, 489 U.S. 288, 308-10 (1989). Dykes cannot prevail in his claim that the prosecution violated his due process rights as they stood at the time of his trial, so that a jurist "hearing petitioner's claim at the time his conviction became final 'would have felt compelled by existing precedent' to rule in his favor" Graham v. Collins, 113 S.Ct. 892, 898 (1993) (quoting Saffle v. Parks, 494 U.S. 484, 488 (1990)). Therefore, Dykes's habeas petition was properly dismissed.
 
 I. False Testimony
 
 6
 A prosecutor's knowing use of false testimony has long been held to violate procedures "central to an accurate determination of innocence or guilt" and does not constitute a "new rule" barred from our consideration. Teague, 489 U.S. at 313; see also Napue v. Illinois, 360 U.S. 264, 269 (1959). Dykes claims the "jailhouse 'snitch system' " was populated with unreliable jailhouse informants. This general assertion does not, however, demonstrate that prosecutors in Dykes's particular case knew that the witnesses against him were lying. Dykes's claim that reversal is required when a prosecutor should have known of the use of perjured testimony fails because such a standard would be a "new rule." See Teague, 489 U.S. at 313.
 
 
 7
 Even if Dykes had shown that the prosecution knowingly used perjured testimony, independent evidence presented at trial established his motive and presence at the crime scenes. Thus, we find that any error is harmless error, because the error did not substantially affect the jury's decision. O'Neal v. McAninch, 115 S.Ct. 992 (1995); Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (1993).
 
 II. Brady violation
 
 8
 The prosecution has a duty to inform the defense of material exculpatory evidence. Brady v. Maryland, 373 U.S. 83 (1963). For evidence to be "material," there must be a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). Material information includes information bearing on witness credibility, "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." United States v. Brumel-Alvarez, 991 F.2d 1452, 1458 (9th Cir.1993); Giglio v. United States, 405 U.S. 150, 154 (1972).
 
 
 9
 At the time of Dykes's trial, no precedent would have supported his claim that the government had a duty to disclose impeachment documents from its files when the prosecuting team was unaware of their existence. A new trial was not required when " 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict.' " Giglio, 405 U.S. at 154 (quoting United States v. Keogh, 391 F.2d 138, 148 (2d Cir.1968)).
 
 
 10
 In this case, the impeachment documents would probably not have affected the outcome. Although additional evidence that the jailhouse informants had fabricated inculpatory statements allegedly made by Dykes would have been useful to the defense to impeach these witnesses, Dykes vigorously cross-examined the state's witnesses about the "snitch system" operating in the jail.
 
 
 11
 In fact, Dykes produced his own witnesses to testify that particular witnesses for the prosecution were lying. After informants Willie Ray Battle, Jesse Williams and Leslie White testified that Dykes had told them in jail about his role in the attacks, Dykes produced another inmate, Edward Moran, who stated that Dykes did not admit complicity in the attacks, and that Battle and Williams had obtained police information about Dykes's case in order to fabricate a "jailhouse confession." Inmate Eugene McDaniel also testified that White and Williams had obtained police information about Dykes's case. In short, the jury was presented with impeachment evidence for each of the witnesses that Dykes argues lied at his trial. We cannot find that the additional material at issue would have changed Dykes's verdict, and thus that its unavailability violated Dykes's rights. Bagley, 473 U.S. at 678; Giglio, 405 U.S. at 154.
 
 
 12
 AFFIRMED.
 
 
 
 *
 The Honorable Danny J. Boggs, United States Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3