[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 00-10729

_____

D. C. Docket No. 99-00062-CR-RH-4

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
09/27/00
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY SWATZIE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(September 27, 2000)

Before COX, WILSON and GIBSON[*], Circuit Judges.

COX, Circuit Judge:

---

[*]     Honorable John R. Gibson, U. S. Circuit Judge for the Eighth Circuit, sitting by designation.

Anthony Swatzie appeals his conviction and sentence for possession of cocaine base and cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a). His appeal presents the issue whether, in light of *Apprendi v. New Jersey*, 120 S. Ct. 2348, 2362-63 (2000), it was plain error for the district court to sentence Swatzie according to its finding, by a preponderance of the evidence, that Swatzie possessed the right kind and sufficient amount of drugs to subject him to an heightened statutory maximum sentence. We affirm.

## I. Facts and Procedural History

According to the trial evidence — which was uncontradicted, because the defense offered no evidence — Swatzie, who served as a confidential informant to the Florida Department of Law Enforcement, was also selling powder and crack cocaine on a regular basis from at least Thanksgiving 1998 to the time of his arrest in July 1999. Swatzie came to the authorities' attention by selling powder cocaine to another confidential informant, David Lowe. Upon Swatzie's arrest at his home, Swatzie permitted law enforcement officers to search his house. Swatzie offered to cooperate, directed officers to drugs and currency in his bedroom, and denied that his wife (the other resident of the house) was involved in drug dealing. Among the drugs found in the bedroom were 21.1 gm of cocaine base and 135.9 gm of cocaine powder. Swatzie

confessed to buying powder cocaine from South Florida and then cooking some of it into crack cookies for a regular customer.

The indictment charged that Swatzie "did knowingly and intentionally possess with intent to distribute cocaine base, commonly known as 'crack cocaine,' and cocaine hydrochloride, controlled substances, in violation of Title 21, United States Code, Sections 841(a) and (b)(1)(B)." (R.1-1 at 1.) The jury was instructed that it could find Swatzie guilty of the charged offense if "the Defendant knowingly and willfully possessed cocaine base or cocaine hydrochloride as charged" and "the Defendant possessed the substance with the intent to distribute it." (R.1-17 at 10.) The jury was not told what 21 U.S.C. § 841(b)(1)(B) was (it is the section imposing enhanced statutory sentencing ranges for certain kinds and quantities of drugs possessed), and the court did not ask the jury to find either what kind of cocaine Swatzie possessed or how much. Swatzie did not object to the indictment or the jury charge, agreeing with the Government that the jury charge was (except in respects not relevant here) "fine." (R.3 at 4.) Nor did Swatzie ask for a special verdict of any kind.

Swatzie did, however, put the amount of and form of cocaine at issue by objecting to the presentence report's findings as to these two facts. But at sentencing Swatzie's counsel characterized this objection only "as a matter of preserving that

3

issue, if Mr. Swatzie takes an appeal," and offered no evidence or argument except to say that "Mr. Swatzie has always maintained that he didn't make those statements," probably referring to Swatzie's statement to authorities that he had cooked up the crack found in his house for a habitual customer. (R.4 at 3.) The district court overruled Swatzie's objection and found, by a preponderance of the evidence offered at trial and in reliance on the presentence investigation report, that Swatzie was responsible for 1330 gm of cocaine powder and 136 gm of crack. This amount included estimates of amounts involved in prior deals described by witnesses, as well as the amounts found in Swatzie's house.

The district court adopted the presentence report's calculation of Swatzie's sentence, which was as follows: Swatzie—who has many prior felony drug convictions—is a "career offender," and as such his offense level is based on the statutory maximum sentence for his offense. U.S.S.G. § 4B1.1. The crack amount found by the district court alone largely exceeds the floor necessary under 21 U.S.C. § 841(b)(1)(B) to make Swatzie eligible for a statutory maximum sentence of life in prison. Because the statutory maximum here is life, the career-offender guideline gives Swatzie an offense level of 37. *See id.* § 4B1.1(A). An offense level of 37 and Swatzie's criminal history category of VI yield a sentencing range of 360 months to

4

life. The district court sentenced Swatzie to life in prison. Swatzie appeals his conviction and sentence.

## II. Issues and Standard of Review

Swatzie presents two issues that warrant discussion.[1] First, he contends that the district court erred in sentencing him to life when the jury's verdict was ambiguous as to what form of cocaine he possessed with intent to distribute. The jury could have found, Swatzie argues, that he possessed only the cocaine powder that he sold to David Lowe, and not the crack that authorities found in Swatzie's residence. Were that the case, according to Swatzie, his statutory maximum sentence would have been only 30 years.[2] This issue, Swatzie points out, is one flagged in *Edwards v. United States*, 118 S. Ct. 1475, 1477 (1998), but not decided. *See id.* ("Of course, petitioners' statutory and constitutional claims would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy.")

---

[1] Swatzie also argues that the district court erred in instructing the jury in an aiding-and-abetting theory though none appeared in the indictment. The district court did not err, plainly or otherwise. *See United States v. Muñoz*, 681 F.2d 1372, 1375 (11th Cir. 1982) ("There is no requirement that the aiding and abetting statute be cited in the indictment for conviction to be obtained upon a theory of aiding and abetting.").

[2] This is the statutory maximum imposed by 21 U.S.C. § 841(b)(1)(C) on defendants with a prior felony drug conviction who possess less than 500 gm of cocaine powder.

Swatzie's second contention is closely related to the first. He argues that the quantity of drugs found by the district court permitted the court to impose a sentence above the lowest statutory maximum for possession with intent to distribute. According to Swatzie, these facts were therefore elements of the crime, and they should thus have appeared in the indictment and been addressed by a jury instruction requiring the jury to find how much of which drugs Swatzie possessed.

Swatzie's issues are so closely intertwined as to be inseparable. Both are about the proper procedure for establishing facts that permit the imposition of a sentence under 21 U.S.C. § 841(b) that exceeds the lowest statutory maximum for possession of drugs with intent to distribute; the only distinction between the issues is that the facts — type of drugs and quantity of drugs — are different. We therefore treat Swatzie's two issues together as a single issue: Whether the kind of drugs that Swatzie possessed with intent to distribute, and the quantities of those drugs that he possessed, may properly be omitted from the indictment and found by the court by a preponderance of the evidence.

Our resolution of Swatzie's case, however, has another overlay of analysis. Swatzie did not timely object to the indictment or the jury instructions, nor did he request a special verdict. As he admits, Fed. R. Crim. P. 52(b) thus limits our review

6

to one for plain error only. *See United Stated v. Pielago*, 135 F.3d 703, 708 (11th Cir. 1998).

### III.  Discussion

"Before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights. . . . If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 1548-49 (1997).  We consider each element of this test seriatim and conclude that we must affirm.

A.  Was there error, and was it plain?

Swatzie tackles the first elements of the plain-error test mostly in reliance on the recent case of *Apprendi v. New Jersey*, 120 S. Ct. 2348, 2362-63 (2000), which issued after the district court had sentenced Swatzie, and which according to Swatzie plainly makes drug quantity and type elements of the crime that must be alleged in the indictment, submitted to the jury, and found beyond a reasonable doubt.  Apprendi was convicted in a New Jersey court on a plea of guilty to possession of a firearm for an unlawful purpose.  The statutory sentencing range for that offense is five to ten

years, but New Jersey has a separate "hate crime" statute that, upon a finding of a purpose of discriminatory intimidation in committing the crime, imposes a sentencing range of ten to twenty years. The New Jersey court held a post-plea evidentiary hearing and found that Apprendi's conduct — firing into a black family's house — was, by a preponderance of the evidence, for the purpose of racist intimidation. It accordingly sentenced Apprendi to 12 years in prison. *See id.* at 2352. The Supreme Court declared this procedure to be in violation of the Sixth and Fourteenth Amendments because it removed an element of the enhanced-sentence crime from the jury's consideration. The rule that the Sixth and Fourteenth Amendments impose, the Court held, is that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362-63. Apprendi did not argue that his indictment unconstitutionally omitted the sentence-enhancing intent, and the Supreme Court "thus [did] not address the indictment question separately." *Id.* at 2356 n.3.

The Government's initial brief merely "[a]ssum[ed] arguendo" that *Apprendi*'s rule applied to enhanced drug sentences imposed under 21 U.S.C. § 841(b)(1)(B). (Gov't Br. at 7.) But under intervening Department of Justice instructions, the Government filed a "Notice of Change of Position," announcing that it conceded that

8

*Apprendi* applied to sentences imposed under § 841, and acknowledged at oral argument that "it was hard to get up with a straight face" and argue that *Apprendi* did not apply here. The Government did, however, contend that any suggestion in *Apprendi* that the indictment needed to refer to the sentence-increasing facts was not binding because the Court did not directly address the question.

We prefer in this case to take the Government's first recommended approach as to issues surrounding both the failure to submit the drug issues to the jury and the sufficiency of the indictment: we assume arguendo that there was error, and that it was plain. There are at least two reasons not to answer those questions now. First, holdings on these questions are not necessary to our affirmance of Swatzie's conviction and sentence; for the reasons we discuss below, Swatzie has not satisfied the other two parts of the plain-error test. Second, we are not fully informed. Because of the Government's concession, both sides of the jury-submission issue have not been addressed. Moreover, because the Government did not consider the sufficiency of the indictment to be properly raised in Swatzie's brief — while we construe Swatzie's brief liberally and consider the issue raised, Swatzie's treatment of the issue was indeed cursory, at best — the Government has not responded to Swatzie's contentions in writing. It would not be prudent for us to resolve such important questions on such briefing, especially when there are other cases pending in which the

9

Government *has* fully briefed *Apprendi*'s effect on indictments alleging § 841 offenses, and when agreeing with Swatzie would require us to declare circuit precedent overruled. *See United States v. Hester*, 199 F.3d 1287, 1291 (11th Cir. 2000) (amount of drugs not element of offense); *United States v. Perez*, 960 F.2d 1569, 1574 (11th Cir. 1992) (indictment need not allege drug quantity for enhanced sentence to apply).

Thus, merely assuming arguendo that Swatzie could show error, and that it would be plain, we turn to the other two parts of the plain-error test.

B.  Did the error affect Swatzie's substantial rights?

Whether or not error occurred, Swatzie cannot show either that it had an effect on his substantial rights or sufficient reason for us to exercise our rarely-invoked power to correct plain error, and he thus cannot satisfy either element three or element four of the plain-error test.  Swatzie was arrested in a sting and, upon leading authorities to the 100-plus grams of cocaine and twenty-odd grams of cocaine base in his house, admitted to possession of the cocaine base and cocaine hydrochloride.  He offered no evidence to dispute whether he had admitted to possessing the cocaine, even when given the opportunity to do so at sentencing, and did not seek to discredit the sources of the evidence against him.[3]   We can fairly say in these circumstances

---

[3]    At sentencing Swatzie did, in conclusory fashion, challenge the amount and type of drugs attributed to him.  In similar circumstances when the omitted element of the offense was

that there was no serious dispute that Swatzie possessed at least 5 gm of cocaine base, enough for the increased statutory maximum, and no evidentiary basis existed for the jury reasonably to have found that Swatzie possessed drugs with intent to distribute, but did not possess both cocaine base and powder at least in the amounts the authorities bagged at Swatzie's house. And as long as the jury found that Swatzie possessed 5 gm of cocaine base with intent to distribute, Swatzie's sentence — both under § 841 and, incidentally, under the Guidelines — would have been identical.

As to the sufficiency of the indictment, moreover, Swatzie does not even argue that he did not know before trial that the quantity or type of drugs could affect his sentence. Indeed, the indictment did cite § 841(b)(1)(B), the quantity-enhancement subsection under which Swatzie was sentenced. The Government also gave Swatzie notice two months before trial, and only a week after the indictment was filed, that the Government believed Swatzie to be subject to "imprisonment from ten years to life" on count one, the § 841 count. (R.1-4 ¶ 10.)

Thus, the failure to submit the issues of the kind and quantity of drugs to the jury, or mention them in the indictment, could not have "affected the outcome of the

---

the materiality of a misrepresentation, the Supreme Court did not consider such a conclusory challenge enough to create a real dispute, and we reach the same conclusion. *See Johnson v. United States*, 520 U.S. 461, 470 n.2, 117 S. Ct. 1544, 1550 n.1 (1997) (On Rule 50 motion, defendant said, "I would argue that the element of materiality has been insufficiently proven and that the Court ought to grant a judgment of acquittal.").

district court proceedings." *United States v. Olano*, 507 U.S. 725, 735, 113 S. Ct. 1770, 1778 (1993). Swatzie counters, though, that when the district court wrongly takes an issue from the jury, and decides it according to a lower burden of proof, we must presume prejudice. We disagree. Swatzie's best case is *Sullivan v. Louisiana*, which held that the failure to instruct the jury in a constitutionally sufficient reasonable-doubt standard can never be harmless beyond a reasonable doubt. 508 U.S. 275, 281, 113 S. Ct. 2078, 2082 (1993). For two reasons, *Sullivan* does not govern this case.

First, the Supreme Court has refused to extend *Sullivan*'s presumption of prejudice to the omission of an element from the jury instructions. *See Neder v. United States*, 119 S. Ct. 1827, 1834-36 (1999) (materiality element of fraud offense improperly determined by judge rather than jury). The error in *Neder* is in material respects indistinguishable from error under *Apprendi*: A fact issue due to be resolved by a jury using a reasonable-doubt standard instead went to the judge, who used a less exacting standard, but because the error is limited to a single element, we have a basis on which to imagine what a fully instructed jury would have done. *See id.* at 1833, 1837.

Second, *Sullivan* was apparently not a plain-error case. The standard for prejudice in plain-error review, regardless of the error's constitutional nature, is not

12

whether the error is harmless beyond a reasonable doubt (the harmless-error standard for preserved constitutional error[4]), but Fed. R. Crim. P. 52(a)'s ordinary harmless error standard, which is whether the error actually "had substantial influence" on the outcome, or leaves us in "grave doubt" that it did (meaning that "the matter is so evenly balanced that [the judge] feels himself in virtual equipoise"), *O'Neal v. McAninch*, 513 U.S. 432, 437-38, 435, 115 S. Ct. 992, 995, 994 (1995) (quoting in part *Kotteakos v. United States*, 328 U.S. 750, 764, 66 S. Ct. 1239, 1248 (1946)). *See Olano*, 507 U.S. at 734, 113 S. Ct. at 1778. Given our ability to size up a dispute over drug quantity and type — or rather to note its absence — we can confidently say that whatever the circumstances in some cases may be, there is not a grave doubt here about the lack of effect.

    C.    Should we exercise our discretion to notice the plain error?

Even if Swatzie were right, nonetheless, that we must presume an effect on his substantial rights in these circumstances, we would still have to ask whether we should exercise our plain-error discretion to correct an error that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson*, 297 U.S. 157, 160, 56 S. Ct. 391, 392 (1936). When the evidence of an element wrongly taken from the jury is "overwhelming," "that question must be

---

    [4]      *See Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967).

answered in the negative." *Johnson*, 520 U.S. 461, 470, 117 S. Ct. 1544, 1550 (1997). As we explained above, a jury could not in this state of evidence have concluded that Swatzie possessed a controlled substance with intent to distribute, but did not possess at least 5 gm of cocaine base. Nor has Swatzie hinted that, for lack of notice from the indictment, he had difficulty disputing the issues of either the kind of drugs or the quantity. Reversing the judgment in these circumstances would thus itself "bestir[] the public to ridicule" the judicial process. *Id.* at 470, 117 S. Ct. at 1550 (quoting R. Traynor, *The Riddle of Harmless Error* 50 (1970)). So even were there plain error here presumptively affecting Swatzie's substantial rights, we would decline to notice it.

## IV. Conclusion

For the foregoing reasons, Swatzie's conviction and sentence are affirmed.

AFFIRMED.