

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-13-2005

# Lambert v. Blaine

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4110

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Lambert v. Blaine" (2005). *2005 Decisions.* Paper 862.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/862

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 03-4110

———————

JAMES RUSSELL LAMBERT

v.

CONNER BLAINE; THE DISTRICT ATTORNEY OF THE COUNTY OF
CHESTER; THE ATTORNEY
GENERAL OF THE STATE OF
PENNSYLVANIA

James Lambert,

Appellant

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 01-CV-5356
District Judge: Honorable Michael M. Baylson

———————

Argued June 9, 2005

Before: AMBRO, VAN ANTWERPEN and TASHIMA*, <u>Circuit Judges</u>

(Opinion filed July 13, 2005)

———————

OPINION

———————

* Honorable A. Wallace Tashima, Senior United States Circuit Judge for the Ninth
Circuit Court of Appeals, sitting by designation.

TASHIMA, Circuit Judge:

James Russell Lambert appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that the state trial court violated his due process rights by admitting into evidence an unreliable eyewitness identification. For the following reasons, we affirm the District Court's denial of Lambert's petition.

## I. Factual and Procedural History

Because we write solely for the parties, we note only those facts relevant to our decision. On November 12, 1982, three black males entered the Coatesville Federal Savings and Loan Bank in Coatesville, Pennsylvania. One of the three pulled out a sawed-off, double-barrel shotgun and ordered the employees and customers in the bank to lie down on the floor. The other two men then took $8,800 in cash from the tellers' drawer, placed it in a bag, and all three fled the bank.

At a pre-trial hearing, Ann Smoker, a bank teller, testified that on the day of the robbery she was working at the first teller window, about five feet from the entrance door to the bank. Smoker testified that she heard someone yell, "Everybody hold it right there," and that she looked up and saw a double-barreled, sawed-off shotgun about six inches away from her. The man holding the gun was about a foot away from Smoker, and Smoker looked at the man's face for about five to ten seconds. The man then yelled, "Everybody get on the floor." Smoker complied. Smoker testified that she did not see this man's face again.

2

Wallace Strevell, the manager of the bank, also testified about the robbery at the pre-trial hearing. Strevell said that, at the time of the robbery, he was seated at his desk, located behind the teller counter. Strevell was on the telephone when he heard a commotion and looked up to see a young black man about 11 feet away, approaching him rapidly. Strevell testified that he looked directly at the man's eyes for "maybe 15, 20 seconds." Strevell also noticed another man at the front of the bank, with a shotgun in his hand. The man who was approaching Strevell took Strevell by the arm, directed him behind the teller counter and told him to lie down. Strevell did not see the man again.

Three days after the robbery, on November 15, Smoker was shown a photo array that included a photo of Lambert. Smoker did not identify Lambert as the man who pointed the shotgun at her and instead identified another person. On that same day, officers presented Strevell with the same photo array. Strevell identified Lambert's photo as the man who led him behind the teller's counter. Lambert was arrested and charged with four counts related to the incident, including robbery and conspiracy.

On December 6, 1983, the Court of Common Pleas for Chester County held a pre-trial hearing on Lambert's motions to suppress in-court identification by Strevell and Smoker. Prior to the pre-trial hearing, Smoker was again shown a photo array that included Lambert's photograph. Smoker did not identify his photograph. At the hearing, however, Smoker identified Lambert, who was sitting at counsel table, as the man that held the gun to her on the day of the robbery. Smoker explained that she was unable to

3

pick Lambert out of the photo array because his eyes were closed in the photograph.

Smoker further testified that earlier that same day, she was seated outside the courtroom before the lunch break, when she saw Lambert come out of the courtroom, escorted by sheriff's deputies on either arm. Lambert was not in handcuffs or ankle shackles. Smoker testified that she said to the person sitting with her, "That's the person that I remember," and that at that moment, she felt the same way she felt on the day the robbery occurred: "My heart was beating fast." Smoker explained that she knew the man exiting the courtroom was named Lambert because that was the name on the subpoena she had received. Smoker also learned on the day of the pre-trial hearing that Lambert was in court because Strevell had picked him out of a photo array. She also had seen Lambert's photograph in the newspaper and knew that he had been arrested. She said, however, that she had identified Lambert in the courtroom based on seeing his face on the day of the robbery.

At the pre-trial hearing, Strevell also was asked if he could identify Lambert, who was sitting at counsel table, as the man who had approached him. Strevell said, "He certainly bears a very strong resemblance. . . . There is some doubt." Strevell then said that another man sitting in the back of the courtroom bore "a strong resemblance, and it's confusing in that he's not seated at the defendant's table." Then, when asked again by the prosecution whether Lambert, seated at defense counsel's table, was the man who took Strevell by the arm and led him behind the teller counter during the robbery, Strevell

4

responded, "To the best of my knowledge it is. That was a year ago. . . . I have no doubt as to my identification in the photo lineup."

Based on Strevell's and Smoker's testimony, as well as the testimony of officers, the state court concluded that the photo array and identification procedure were not suggestive and that an independent basis existed for identifying Lambert, based on the witnesses' opportunity to observe Lambert during the robbery. The court denied Lambert's motions to suppress his in-court identification.

At trial, Smoker identified Lambert as the man who had stood in front of her with a shotgun. Strevell likewise identified Lambert as the man who approached him, took him by the arm, and led him behind the teller counter. On December 9, 1983, the jury found Lambert guilty of robbery, recklessly endangering another person, and criminal conspiracy.

Lambert filed post-trial motions, asserting, among other claims, that the trial court erred in failing to grant Lambert's motion to suppress the photo line-up and in-court identification. The trial court denied the motions. On September 17, 1984, the court sentenced Lambert to a term of imprisonment of 10 to 20 years for robbery and a consecutive term of imprisonment of 5 to 10 years for criminal conspiracy.

Lambert then petitioned for post conviction relief in the state courts, pursuant to the Pennsylvania Post Conviction Relief Act. The Pennsylvania Superior Court concluded that Smoker had a reliable independent basis for her in-court identification of

5

Lambert and affirmed the order of the Court of Common Pleas denying Lambert's petition.

Lambert then filed his federal petition for writ of habeas corpus. The district court rejected Lambert's claim of unreliable eyewitness identification and denied the petition. This timely appeal followed.

## II. Analysis

Where, as here, the district court relies exclusively on the state court record and does not hold an evidentiary hearing, the scope of our review of the district court's decision is plenary. Moore v. Morton, 255 F.3d 95, 103 (3d Cir. 2001). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may not grant a petition for writ of habeas corpus as to any claim that a state court has adjudicated on the merits unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d); Williams v. Price, 343 F.3d 223, 229 (3d Cir. 2003) (citing Williams v. Taylor, 529 U.S. 362, 405-07 (2000)).

### A. Unreliable Identification

An identification procedure that is unnecessarily suggestive and creates a substantial likelihood of irreparable misidentification violates due process. Manson v. Brathwaite, 432 U.S. 98, 106 (1977). Unnecessary suggestiveness alone, however, does

not require the exclusion of evidence. Neil v. Biggers, 409 U.S. 188, 199 (1972). "A 'suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability,' for reliability is the 'linchpin in determining the admissibility of identification testimony.'" Brathwaite, 432 U.S. at 106.

As the Supreme Court explained in Biggers, in order to determine whether the identification was reliable even though the confrontation procedure was suggestive, a court must apply a totality of the circumstances analysis. Biggers, 409 U.S. at 199. The court considers factors that include: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation. Id. at 199-200.

In Biggers, the Court enumerated and applied each of these factors, noting that the witness had ample opportunity to view the defendant, paid a high degree of attention, gave a detailed description of the defendant and was unequivocal in her identification. Id. at 200. The Court noted that several months had passed between the time of the crime and the identification, but reasoned that, weighing all the factors, there was no substantial likelihood of misidentification and that the evidence was properly allowed to go to the jury. Id. at 201.

Similarly, in <u>Brathwaite</u>, the Court enumerated and applied each of the <u>Biggers</u> factors to determine whether an identification from a single-photograph display was unreliable. <u>Brathwaite</u>, 432 U.S. at 114-16. The Court noted that the witness looked directly at the defendant, who was in close proximity, paid a high degree of attention, gave a detailed and accurate description of the defendant within minutes of the transaction, and positively and unequivocally identified defendant's photograph two days later. <u>Id.</u> at 114-15. The Court concluded that, given these factors, as well as the absence of any coercive pressure positively to identify the photograph, there was not a "very substantial likelihood of irreparable misidentification." <u>Id.</u> at 116.

We reached the opposite conclusion in a case on direct appeal, based on facts similar to the facts in this case, in <u>United States v. Emanuele</u>, 51 F.3d 1123 (3d Cir. 1995). In <u>Emanuele</u>, the witnesses were bank tellers who observed a robbery. Both were unable to identify the robber from a photo array. <u>Id.</u> at 1126. The two witnesses were subpoenaed by the government to testify, and, while sitting outside the courtroom, saw the defendant being led from the courtroom in manacles by the U.S. Marshals. The two witnesses spoke with one another, saying "it has to be him." <u>Id.</u> We examined the totality of the circumstances, applied the <u>Biggers</u> factors and noted that the confrontation between the witnesses and the manacled defendant was impermissibly suggestive. <u>Id.</u> at 1128-30. We concluded that the witnesses' failure to identify the defendant despite the opportunity to observe, coupled with the impermissibly suggestive "viewing of the

8

defendant in conditions reeking of criminality, bolstered by the comments of another witness," rendered the in-court identification unreliable. Id. at 1131.

Here, the state court applied only one of the Biggers factors, the opportunity to observe, in determining whether Smoker's identification of Lambert was reliable. The state court did not consider either Smoker's confrontation with Lambert outside the courtroom at the pre-trial hearing or Smoker's failure to select Lambert's photograph from the photo array. As in Emanuele, Smoker's failure to identify, on two separate occasions, Lambert's photograph, coupled with the somewhat suggestive confrontation with Lambert, who was flanked by U.S. Marshals outside the courtroom prior to the pre-trial hearing, suggests that Smoker's in-court identification may have been unreliable.

We are mindful, however, that this case is before us not on direct appeal, but rather, on appeal from the denial of a habeas petition filed pursuant to 28 U.S.C. § 2254. Applying the highly deferential standard of review established by AEDPA, we can reverse the district court's denial of Lambert's petition only if the state court opinion is contrary to, or an unreasonable application of, clearly established federal law of the Supreme Court. 28 U.S.C. § 2254(d); Price, 343 F.3d at 229 (citing Williams v. Taylor, 529 U.S. at 405-407). Whether the state court opinion denying Lambert's petition for post conviction relief meets that standard is a close question. It is also one that we need not reach, because we conclude that, even if the trial court erred in allowing Smoker's in-court identification, the error was harmless.

9

**B. Harmless Error**

In order to grant habeas relief, not only must we find that a constitutional error occurred during trial, we must also find that the error was not harmless. Yohn v. Love, 76 F.3d 508, 522 (3d Cir. 1996). We grant habeas relief only if the constitutional trial error "had substantial and injurious effect or influence in determining the jury's verdict." Hassine v. Zimmerman, 160 F.3d 941, 950 (3d Cir. 1998) (citing Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)).

Smoker's identification was not the only identification evidence presented to the jury. Strevell, the bank manager, also provided an in-court identification, after having previously selected Lambert out of a photo array a few days after the robbery. Although there was some equivocation by Strevell at the pre-trial hearing, his equivocation was minor and does not significantly diminish the import of Strevell's selection of Lambert's photograph, three days after the robbery, from a photo array. See Emanuele, 51 F.3d at 1131 (observing that witness's slight qualification – not being "one hundred percent sure" – does not significantly diminish import of identification). Smoker's testimony did not have quite the bolstering effect that Lambert argues it had, for there was little doubt or equivocation on Strevell's part.

Further, we note that Smoker and Strevell provided conflicting accounts, a fact that weighs in favor of a finding of harmless error. While Smoker identified Lambert as the man who approached her with a shotgun in the front of the bank, Strevell identified

10

Lambert as the man who walked up to his desk, led him behind the teller's counter, and then stayed behind the counter during the course of the robbery. Strevell also testified that the man with the shotgun remained at the front of bank. Thus, although it appears that Smoker's interaction was with one of the three robbers and Strevell's interaction was with another of the three, both Smoker and Strevell identified the same man, Lambert, as the man they encountered. This inconsistency may have helped the defense, which could have argued to the jury that, because of this inconsistency, the jury should give little weight to the witnesses' testimony and identification of Lambert.

In sum, we conclude that, even if admission of Smoker's testimony was a constitutional trial error, the error was harmless because it did not have a substantial and injurious effect or influence on the jury's verdict.

## C. Motion for Expanded Certificate of Appealability

Lambert's motion for a certificate of appealability ("COA") was previously denied by a motions panel of the court, except as to Lambert's due process claim. Lambert asks us to reconsider the prior denial and grant a COA to consider counsel's ineffectiveness in failing adequately to cross-examine Strevell.

We must issue a COA if the petitioner has made "a substantial showing of the denial of a constitutional right." Bronshtein v. Horn, 404 F.3d 700, 720 (3d Cir. 2005) (citing 28 U.S.C. § 2253(c)(2)). Lambert has not made any showing, substantial or otherwise, that his trial attorney's failure to cross-examine Strevell about his equivocation

11

in identifying Lambert at the pre-trial hearing fell below the standard set forth by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Moreover, Lambert's trial counsel in fact did cross-examine Strevell, on re-cross, about his equivocation at the pre-trial hearing. Because Lambert has not made a substantial showing of a denial of his right to effective assistance of counsel, we deny Lambert's request for a COA.

### III. Conclusion

For the foregoing reasons, the September 22, 2003, order of the District Court is affirmed.

_____

AMBRO, *Circuit Judge*, Dissenting

Because I do not agree with my colleagues that the in-court identification in this case was harmless, I respectfully dissent. The admission of Smoker's testimony produced, I believe, a "substantial and injurious effect or influence in determining the jury's verdict." Hassine v. Zimmerman, 160 F.3d 941, 955 (3d Cir. 1998). I thus consider the underlying question the majority did not need to address—whether the state court opinion was an unreasonable application of clearly established Supreme Court precedent, 28 U.S.C. § 2254(d), and conclude that it was. For these reasons, I would reverse the District Court and grant Lambert a new trial.

I.

We have explained that "a constitutional trial error is not harmless if the court is in 'grave doubt' as to whether the error had a substantial and injurious effect or influence in determining the jury's verdict." Hassine, 160 F.3d at 955 (quoting O'Neal v. McAninch, 513 U.S. 432, 436 (1995)). Though the term "grave doubt" arguably connotes a more profound degree of uncertainty, this threshold is met when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." O'Neal, 513 U.S. at 435. "The crucial inquiry is the 'impact of the error on the minds of the jurors in the total setting.'" Hassine, 160 F.3d at 955

13

(quoting <u>Yohn v. Love</u>, 76 F.3d 508, 523 (3d Cir. 1996)).

My colleagues offer two reasons to support their conclusion of harmlessness. First, they stress that "Smoker's testimony did not have quite the bolstering effect that Lambert argues it had, for there was little doubt or equivocation on Strevell's part [in his identification testimony]." To begin, I find in the record evidence of both equivocation and doubt by Strevell. For example, immediately following the robbery Strevell "was not able to tell anyone what [the] individual was wearing" and was unable to describe his hair or certain facial features. Similarly, he testified in a pre-trial hearing that another man in the courtroom bore a "very strong resemblance" to Lambert and that he had "some doubt" about his in-court identification.

Moreover, the strength of Strevell's testimony does not change the fact that the jury in this case convicted Lambert almost exclusively on the basis of the *two* identification witnesses. "[I]t is 'inappropriate to ask whether there was sufficient evidence to support the result, apart from the phase of the trial affected by the error.'" <u>Id.</u> (quoting <u>Yohn</u>, 76 F.3d at 523). We are properly concerned only with the potential effect of the error on the minds of the jurors in the total setting. In this case, because Smoker was one of only two witnesses who offered direct evidence of Lambert's involvement in the crime, it seems clear to me that her testimony influenced the jury significantly. Thus I cannot agree with my colleagues' conclusion that her testimony had no substantial and injurious effect or influence in the determination of the verdict.

14

My colleagues also note that "Smoker and Strevell provided conflicting accounts, a fact that weighs in favor of a finding of harmless error." In my estimation, the corroborative, prejudicial effect of the witnesses' testimony overwhelmingly outweighs any potential doubt that might have been caused by inconsistencies in the details they described. Put simply, it is much more significant that the witnesses both identified Lambert as a perpetrator of the crime than it is that they differed on his precise role. Both witnesses put Lambert in the bank. To this end, each witness's testimony corroborated and bolstered the other's and the jury's verdict should be seen as the product of their cumulative effect.

## II.

By failing to consider the totality of the circumstances as required by Supreme Court precedent and offering only a cursory, wholly unconvincing analysis of the reliability issue presented, the state court unreasonably applied Supreme Court precedent. The Supreme Court has explained that, when assessing reliability, the "central question" is "whether under the 'totality of the circumstances'" the identification gave rise to a "substantial risk of misidentification." Neil v. Biggers, 409 U.S. 188, 199 (1972) (quoting Stovall v. Denno, 388 U.S. 293, 302 (1967)). To measure the totality of the circumstances, we evaluate at least five factors that may contribute to the risk of misidentification: "[1] the witness' original opportunity to observe a defendant and [2] the degree of attention during that observation; [3] the accuracy of the initial description; [4]

15

the witness' degree of certainty when viewing a defendant or his image; and [5] the length of time between the crime and the identification procedure." United States v. Emanuele, 51 F.3d 1123, 1128 (3d Cir. 1996) (citing Biggers, 409 U.S. at 199-200; Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Gov't of Virgin Is. v. Riley, 973 F.2d 224, 228 (3d Cir. 1992); Reese v. Fulcomer, 946 F.2d 247, 258 (3d Cir. 1991); United States v. Dowling, 855 F.2d 114, 117 (3d Cir. 1988), aff'd, 493 U.S. 342 (1990)).  The Supreme Court has routinely applied these five factors and has left no doubt that a consideration of the totality of the circumstances (if not precisely these five factors) is mandated.

In Emanuele, we stressed the importance of analyzing all of the Biggers factors in order to determine the reliability of an identification.[1]  We noted, for example, that "the sincerity or truthfulness of the witness must be considered *along with the other Biggers factors* in order to determine whether the risk of misidentification still exists, notwithstanding a witness' testimony to the contrary." Emanuele, 51 F.3d at 1129 (emphasis added).  Ultimately we concluded that "[t]he trial court failed to consider the

---

[1] My colleagues rightly note that Emanuele was a case of direct, not *habeas*, review.  It remains relevant, however, to our analysis of governing Supreme Court precedent.  As we have explained, "[i]n determining whether a state decision is an unreasonable application of Supreme Court precedent, this [C]ourt has taken the view that 'decisions of federal courts below the level of the United States Supreme Court may be helpful to us in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent.'"  Fischetti v. Johnson, 384 F.3d 140, 149 (3d Cir. 2004) (quoting Marshall v. Hendricks, 307 F.3d 36, 51 (3d Cir. 2002)).

16

'totality of the circumstances,' such as . . . the inability of the witness to recognize defendant in a photospread despite a sufficient opportunity to observe the robber at close range. *The court thus failed to apply the correct legal standard*." Id. (emphasis added).

In this case, the Superior Court's failure to take into account the totality of the circumstances—notwithstanding its claim that it did so—was an objectively unreasonable application of Supreme Court precedent. The Superior Court considered only one of the five Biggers factors in concluding that Smoker's in-court identification was reliable. Commonwealth v. Lambert, No. 1073 EDA 1999 (Pa. Super. Ct. Mar. 24, 2000) (unpublished mem. opinion). It based its conclusion that the challenged in-court identification was reliable solely on its belief that Smoker's initial observation of Lambert was extremely reliable because it was "at close range in the throes of a situation where Lambert's actions commanded her entire attention." Lambert, No. 1073 EDA 1999. According to the Superior Court, Lambert's actions "commanded [Smoker's] entire attention" because she viewed him from the end of the barrel of a shotgun he allegedly pointed at her face. In effect, the Court concluded that because Smoker had a shotgun 1.5 feet from her face, her initial observation was so reliable as to overcome any evidence of unreliability. Id. Unlike the Supreme Court in Braithwaite and Biggers, the Superior Court reached this conclusion without discussing the evidence of unreliability.

17

And evidence of unreliability was pervasive.[2] The Superior Court ignored all of the following—the brevity of the encounter (approximately five seconds), Smoker's positive identification of another individual in a photo array, her failure to identify Lambert in a subsequent photo array, the lapse of thirteen months between her testimony and the crime, her exposure to a photograph of Lambert in an article in the newspaper identifying him as the only suspect, Smoker's knowledge that her boss would be testifying against Lambert, and the suggestive confrontation Smoker experienced outside the courtroom when Lambert passed by her escorted by uniformed officers on three occasions.

The majority accurately characterizes the highly deferential standard that governs

---

[2] In my estimation, the evidence of unreliability in this case far outweighs the evidence we found so compelling in Emanuele. There we concluded that Lorraine Woessner's eyewitness identification of the defendant, Joseph Emanuele, was unconstitutionally unreliable. Woessner allegedly viewed Emanuele for *several minutes* in a bank lobby while a robbery was in progress. In this case, Smoker viewed Lambert for *approximately five seconds*, her face 1.5 feet from the end of the barrel of a shotgun. In an initial photo array shortly after the robbery, Woessner was unable positively to identify a suspect. Smoker positively identified *another individual* in her first photo array. In Emanuele, there was no second photo array, while in this case Smoker failed to identify Lambert a second time. There is evidence in this case, unlike in Emanuele, that, before successfully identifying Lambert for the first time, Smoker saw Lambert's photograph in a newspaper, was aware that he was the only suspect, and further knew that her boss would be testifying against Lambert. Finally, as in Emanuele, Smoker was confronted by Lambert in the courthouse lobby. Unlike Woessner's single exposure to Emanuele, however, Smoker saw Lambert (escorted by uniformed, armed guards) not once, but on *three* occasions, before entering the courtroom to identify him for the first time. In short, if the reliability of Woessner's identification testimony in Emanuele was "bad," the reliability of Smoker's identification testimony was "very bad."

18

our *habeas* analysis.  This deference is not without its limits, however.  In my view, this case presents an instance where a state court clearly failed to apply governing Supreme Court precedent with any diligence or rigor.  The Superior Court simply made no effort to apply the <u>Biggers</u> factors or otherwise consider the totality of the circumstances as it was obliged to do.

*   *   *   *   *

In this context, I respectfully dissent.