HAMILTON, Senior Circuit Judge,
dissenting:
By far, the most critical and hotly contested issue at Dukes’ trial was whether Dukes intended that the Financial Warfare Club constitute a scheme to defraud investors of their money or whether he actually believed that the Financial Warfare Club presented them with a legitimate investment opportunity. Yet, the jury was erroneously permitted to read the Conclusions of Law portion of the “CONSENT ORDER” [14], (J.A.1911), which portion set forth the Securities Commissioner of Maryland’s conclusion that, with respect to Dukes’ activities in promoting the Financial Warfare Club, Dukes “made material misrepresentations or omissions in connection with the offer or sale of securities in Maryland and in dealing with investment advisory clients, in violation of Sections 11-301 and 11-302 of the [Maryland Securities] Act.” (J.A.1917). The jury was also erroneously permitted to consider the Injunction portion of the Consent Order, which portion ordered Dukes to “permanently cease and desist from misrepresentation or omission of material facts or other activities that would constitute fraud in connection with the offer or sale of securities in violation of Section 11-301 of the Act; and ... permanently cease and desist from engaging in fraudulent investment advisory activities with respect to the offer and sale of securities in violation of Section 11-302 of the Act....” (JA.1917).[15]
All of this information undoubtedly left the jury with the impression that a high-ranking Maryland official, with likely far more expertise in the field of securities than any individual juror in the case, had ■ already found Dukes guilty of the same fraudulent activities for which the government sought to convict Dukes in his federal criminal trial. That any probative value *55 of such information was substantially outweighed by the danger of unfair prejudice is obvious. It is human nature to rely upon the opinion of one exceedingly more knowledgeable than us in a given field. It is also human nature to rely upon an opinion carrying the imprimatur of an entire state. With all measure of certainty, these two circumstances combined to create the inevitable danger that the jury would rely upon the Commissioner’s conclusion that Dukes committed fraud in promoting the Financial Warfare Club and her related fraud-terminology-laden orders to cease and desist to find Dukes guilty of mail fraud in connection with his activities in promoting the Financial Warfare Club. The mail fraud counts also supplied predicate offenses for the counts charging Dukes with interstate transportation of property obtained by fraud and money laundering.
Under these circumstances, the Conclusions of Law and the Injunction portions of the Consent Order should have been excluded from the jury’s consideration pursuant to Federal Rule of Evidence 403 (Rule 403), Fed.R.Evid. 403.[16] Because I cannot say with fair assurance that, without stripping the erroneous admission of the Conclusions of Law and Injunction portions of the Consent Order from the whole, the jury’s verdict was not substantially swayed by the error, United States v. Curbelo, 343 F.3d 273, 286 (4th Cir.2003), I would vacate Dukes’ convictions and sentence and remand for a new trial. Accordingly, I dissent.
I.
Before delving further into the actual merits of Dukes’ challenge to the admission of the Conclusions of Law and Injunction portions of the Consent Order as violative of Rule 403, I will address the majority’s erroneous holding that our review of such challenge is limited to the plain-error standard of review set forth in United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). To preserve an evidentiary challenge for appellate review under the most appellant-friendly standard of review, Federal Rule of Evidence 103(a)(1) requires “a timely objection or motion to strike ... stating the specific ground of the objection, if the specific ground was not apparent from the context.” (emphasis added). Referring to this last clause, in Werner v. Upjohn Co., 628 F.2d 848 (4th Cir.1980), we explained that Rule 103(a)(1) “requires specific objection only where the specific ground would not be clear from the context.” Id. at 853. We went on to hold that the specific ground requirement did not apply in that case because, although the defendant had only made a general objection to the admission of the challenged item of evidence at trial, the defendant had filed a pretrial motion with supporting memoranda asking that all references to the challenged item of evidence be suppressed. Id. at 853. Based upon this situation, we held: “From our examination of the record, we have no doubt that the ground for objection was clear to everyone.” Id.
Here: (1) Dukes timely objected to the admission of the Consent Order with the exception of the Findings of Fact portion (to which he had stipulated); and (2) the ground for his objection was apparent from the context. With respect to the timely objection requirement, at the time the government sought to admit the en *56 tirety of the Consent Order and began reading from it, Dukes offered the following objection after receiving the district court’s permission to approach for a bench conference: “Your Honor, in that document, aside from those specific findings of fact that my client expressly consented to, everything else in that document is the commissioner’s hearsay that has no place before this jury.” (J.A. 758). The government immediately responded: “We’ll go right to the findings. We can go right to the findings, Your Honor. I was just sort of laying the foundation so the jury understands where we’re reading from.” Id. The district court then told the government: “Tell them — read them what you did at the bench that admit to these findings of fact, but they are conclusions of law, if you want to read in specific, not the whole thing.”[17] Id. The government responded: “No, we’re not going to read the whole thing.” (J.A. 758-59). The district court concluded: “All right.” (J.A. 759).
With respect to the specific ground for his objection being apparent from the context, the record shows that prior to Dukes’ just quoted objection at trial, Dukes had made and the district court had granted a motion in limine with respect to the Summary Order to Cease and Desist (the Cease and Desist Order) issued by the Securities Commissioner of Maryland. Such order preceded the Consent Order and alleged that, with respect to his activities in promoting the Financial Warfare Club, Dukes violated sections 11-301 and 11-302 of the Maryland Securities Act. Additionally, akin to the Consent Order, the Cease and Desist Order ordered Dukes to “cease and desist from engaging in material misrepresentations or omissions in connection with the offer or sale of securities in [Maryland], pending a hearing in this matter or until such time as this Order is modified or rescinded by the Securities Commissioner,” (page 12 of the Cease and Desist Order), and to “cease and desist from engaging in material misrepresentations or omissions in connection with the offer of investment advice in [Maryland], pending a hearing in this matter or until such time as this Order is modified or rescinded by the Securities Commissioner,” (page 13 of the Cease and Desist Order). In his motion in limine, Dukes expressly argued, inter alia, that the “never-proven allegations set forth in the Cease and Desist Order are of no probative value but are extremely prejudicial to Mr. Dukes.” In support of this argument, Dukes cited Rule 403.
In initially addressing Dukes’ motion in limine, the district court stated:
This is a motion from Mr. Dukes in limine to preclude the government from introducing as an exhibit the summary order to cease and desist issued by the Securities Commissioner of Maryland. I looked at this one, and it seems to me — at least without having the benefit of hearing what the government’s position is-that this is an accusatory order that does not amount to an adjudication, with some pretty powerfully prejudicial stuff in it, and it seems to me that the position that [Dukes] is taking that *57 he does not dispute the actual order entered!.]”
(J.A. 92) (emphasis added). Following a response by the government that it expected to call one witness to testify that he delivered the Cease and Desist Order to Dukes, the district court stated:
[Dukes] has, in effect, proposed a stipulation to you that the State of Maryland Securities Commissioner did in fact, on or about March 5, 2001, ordered Mr. Dukes to cease and desist the activities, which I assume are described in the order in more detail, but that he continued to do so in violation of the order.
It seems to me that cleans up all the questions of the pretty powerful allegations in this order that are not the result of any adjudicated proceeding but, rather, solely accusatory.
Would that not solve the problem? (J.A. 93) (emphasis added).
The government responded: “Your Hon- or, I think the only issue would be the question of whether or not we would have to refresh a witness’ recollection of what they did in terms of____” Id. The district court interrupted: “You mean somebody from the Maryland Securities Commission?” Id. The government answered:
There actually will be an investigator from the Maryland Securities Commission who actually served this on Mr. Dukes at the time. It’s simply a matter there — as I said, we don’t intend to introduce the actual allegations itself but simply there will be references to the fact that this was served on Dukes, and that despite the fact that it was served on him that they continued on their merry way to present this to individuals in other states and continued to use the same mailing address in Maryland.
I think it will probably come up — I may be just hedging a little bit. In terms of this witness’ recollections of things, he may actually remember a lot more than what I’m proposing, and it was simply out of an abundance of caution.
(J.A. 93-94).
The district court concluded:
What I will do is this. I’m going to grant his motion with respect to the actual document that’s attached to his exhibit, but that’s without prejudice to your right to make inquiry of a witness as to the existence of a cease and desist order, and it would not preclude you from showing this document to the witness to refresh their recollection of the witness if the witness can’t remember that a cease and desist order was entered, but that by referring to that exhibit during an examination of the witness I will make that an exception to the rule that once it’s been referred to it’s in evidence. It will not be in evidence. I won’t permit this, because I think it’s far too accusatory in nature.
So, that will be my ruling on this motion.
(J.A. 94) (emphasis added).
When Dukes’ motion in limine with respect to the Cease and Desist Order is considered in context with the colloquy between the district court and the parties on such motion and the two bench conferences concerning the Consent Order, there can be no reasonable doubt that when Dukes objected to the admission of the entire Consent Order minus the stipulated Findings of Fact portion, the ground for his objection was violation of Rule 403. As with the case of the defendant in Werner, from a full examination of the record, there is no doubt that “the ground for objection was clear to everyone.” Id. at 853. Accordingly, Dukes preserved his right to have his evidentiary challenge to the Conclusions of Law and the Injunction *58 portions of the Consent Order reviewed under the most appellant-friendly standard of review.
II.
Having concluded that the admission of the Conclusions of Law and the Injunction portions of the Consent Order violated Rule 403, the relevant question becomes one of harmless error under Federal Rule of Criminal Procedure 52(a), with the government bearing the burden of proving harmlessness. United States v. White, 405 F.3d 208, 223 (4th Cir.2005) (government bears burden of proof in proving harmless error under Federal Rule of Criminal Procedure 52(a)). In United States v. Curbelo, 343 F.3d 273 (4th Cir.2003), we gave the following helpful elucidation of Rule 52(a)’s harmless error standard:
In its landmark decision in Kotteakos, the Supreme Court explained that when reviewing a noneonstitutional error under Rule 52(a), an appellate court must determine if the Government has proved “with fair assurance ... that the judgment was not substantially swayed by the error.” 328 U.S. at 765, 66 S.Ct. 1239. Moreover, in determining if the Government has met this burden, a court must not “strip [] the erroneous action from the whole.” Id. Thus, [t]he inquiry cannot be merely whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand. Id. The Court later explained that “grave doubt” meant “that, in the judge’s mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.” O'Neal v. McAninch, 513 U.S. 432, 435, 115 S.Ct. 992,130 L.Ed.2d 947 (1995).
Id. at 286.
To reiterate, I cannot say with fair assurance that, without stripping the erroneous admission of the Conclusions of Law and Injunction portions of the Consent Order from the whole, the jury’s verdict was not substantially swayed by the error. The error went to the very heart of the government’s case against Dukes. In order to convict Dukes on the mail fraud counts, the government bore the burden of proving beyond a reasonable doubt that Dukes “acted with the specific intent to defraud” the Financial Warfare Club investors.[18] United States v. Godwin, 272 F.3d 659, 666 (4th Cir.2001). Even Dukes’ convictions on the remaining counts were all predicated upon Dukes being convicted of mail fraud. See 18 U.S.C. §§ 1957, 2314.
Among other witnesses and documentary evidence, the government presented the testimony of eighteen investor witnesses at trial. Dukes never disputed the accuracy of the government’s evidence at trial. For example, Dukes did not dispute that he had told potential investors information that was untrue. The crux of Dukes’ defense at trial was a good faith defense. Specifically, Dukes claimed that he always intended for the Financial Warfare Club to deliver on his promises to investors, but that circumstances beyond his control *59 doomed the project. The circumstances allegedly beyond his control were in the form of growth of the project too fast for he and his business partner Teresa Hodge to conduct presentations and meet member demands and the legal problems created by the Cease and Desist Order. One of the overarching emotional themes of Dukes’ defense was that he was black, and as a black man, he created the Financial Warfare Club to provide his fellow black community access to the fruits of the stock market, which blacks had traditionally been denied. According to Dukes, the Financial Warfare Club was the product of his hopeful vision not a scheme to defraud. Dukes also admits that there were times that he, in the enthusiasm of the moment and due to his passion for the cause, exaggerated information he told potential investors.
To be sure, the jury heard compelling evidence that Dukes knowingly misrepresented his credentials to potential investors in the Financial Warfare Club and significantly improved his lifestyle (i.e., enjoying fancy dinners and plush hotel rooms) via the money he received from Financial Warfare Club investors. The jury also heard evidence of the complete lack of financial success of the Financial Warfare Club and Dukes’ failure to provide investors with any financial education seminars as he promised. But, nonetheless, all of this evidence was only circumstantial evidence of Dukes’ intent to defraud Financial Warfare Club investors of their money. The Conclusions of Law and Injunction portions of the Consent Order arguably fall into the direct evidence category on the critical issue of Dukes’ intent, which would naturally be more compelling to the jury than the circumstantial evidence. For example, the jury could have easily viewed the Consent Order as a quasi-judicial order which had already found Dukes guilty of fraud based upon the same underlying conduct as that charged in the federal criminal indictment. The temptation for the jury to return a verdict of guilty in the face of such an item of evidence would have been overwhelming.
The critical flaw in the majority opinion’s analysis of the merits question is that it never squarely addresses the actual impact, one way or the other, of the jury’s ability to consider the Conclusions of Law and Injunction portions of the Consent Order. Rather, it merely highlights the circumstantial evidence before the jury tending to show that Dukes acted with the specific intent to defraud the Financial Warfare Club investors and then, in conclusory fashion, states: “Given the cumulative evidence of Dukes’s misrepresentations to potential FWC investors and members, and taking into account any error in admission of the consent decree, we conclude that Dukes has not shown how admission of the consent decree affected his substantial rights because we are assured ‘that the judgment was not substantially swayed by [any possible] error.’ ” Ante at 48-49 (quoting Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).
Notably, the government does not even attempt to argue that admission of the Conclusions of Law and Injunction portions of the Consent Order passed Rule 403 balancing in favor of admission. Rather, the government’s line of defense is to stress that it only focused on the Findings of Fact portion of the Consent Order at trial.
This line of defense is a nonstarter for the government, because the undisputed record shows that the jury, nonetheless, had the opportunity to read, at the repeated urging of the government during closing arguments, the entire Consent Order during deliberations. There is simply no way around the fact that the jury was urged to consider a powerfully prejudicial item of evidence that went to the most *60 critical and hotly contested issue in the case. This is just one of those cases where no matter how persuasive the other evidence of fraudulent intent was, the erroneously admitted evidence was so compelling in favor of finding that Dukes acted with fraudulent intent no reasonable person could say with fair assurance that the jury here was not substantially swayed by such erroneously admitted evidence.
III.
To conclude: (1) Dukes sufficiently complied with Rule 103 to avoid plain-error review; (2) the Conclusions of Law and Injunction portions of the Consent Order violated Rule 403’s balancing test; (3) under the applicable standard of review the government bore the burden of proving the error was harmless; and (4) the government did not carry its burden of proving the error was harmless. Accordingly, I would vacate the criminal judgment in this case and remand the case for a new trial. I would not reach any other assignment of error by Dukes.

. The majority opinion refers to this document as the consent decree. I will refer to it as "the Consent Order.”

. I will explain later why I believe Dukes sufficiently objected to the admission of the Conclusions of Law and Injunction portions of the Consent Order to have preserved the issue for nonplain-error review.

. Rule 403 provides: “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” Fed. R.Evid. 403.

. In the earlier bench conference referenced by the district court, Dukes objected to the admission of any allegations contained in the Consent Order and made clear that he believed the only admissible portion of the Consent Order was the Findings of Fact portion. At the same bench conference, the government acknowledged that Dukes did not agree to the legal conclusions contained in the Consent Order. At the conclusion of this earlier bench conference, the district court told Dukes and the government that it intended “to tell the jury there's no objection to tire facts contained in the” Consent Order. (J.A. 750-51).

. The mail fraud statute, 18 U.S.C. § 1341, provides in relevant part:
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, ... shall be fined under this title or imprisoned not more than 20 years, or both.

Id.