FILED
United States Court of Appeals
Tenth Circuit

March 18, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

WORD ACKWARD, JR.,

Petitioner-Appellant,

v.

LOUIS BRUCE, Warden, Hutchinson
Correctional Facility; PAUL
MORRISON, Kansas Attorney
General,

Respondents-Appellees.

No. 08-3102
(D.C. No. 5:07-CV-03052-WEB)
(D. Kan.)

ORDER AND JUDGMENT*

Before **MURPHY**, **McKAY**, and **ANDERSON**, Circuit Judges.

Word Ackward, an Oklahoma prisoner serving a life sentence for felony

murder, appeals from the district court's denial of his petition for a writ of habeas

corpus filed pursuant to 28 U.S.C. § 2254.  We granted a certificate of

---

* After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

appealability (COA) on one issue: whether the introduction of the murder weapon and associated testimony at trial had a substantial and injurious effect on the verdict and consequently prejudiced Mr. Ackward's constitutional rights. Because we conclude that the admission of this evidence was harmless, we affirm.

BACKGROUND

The following is a brief summary of the facts, taken primarily from the Kansas Supreme Court's direct appeal decision. *State v. Ackward*, 128 P.3d 382, 385-86, 388, 392-93 (Kan. 2006). We presume the facts found by the state court to be correct. *See* 28 U.S.C. § 2254(e)(1).

On February 12, 2003, Joshua Buckman was killed by gunshot at a Topeka, Kansas apartment complex. On the night of the murder, he and his friend, Nathan Wells, met Mr. Buckman's friends, Mr. Ackward and Mario Oneal, at a gas station. Mr. Buckman and Mr. Wells, who were in one car, followed Mr. Ackward and Mr. Oneal, who were in another car, to the apartment complex and parked next to them. Mr. Ackward backed the car he was driving into the parking space, so the driver's windows were facing each other. Mr. Buckman and Mr. Ackward went into an apartment building, while the other two stayed in the cars. According to Mr. Ackward, they went to the apartment building so that Mr. Buckman could buy marijuana.

A short while later, Mr. Wells and Mr. Oneal heard two gunshots. Mr. Oneal moved to the driver's seat of the car he was in and pointed a gun at Mr. Wells, who was in the other vehicle, and asked him for money. As Mr. Wells responded that he had no money, Mr. Ackward ran from the apartment building to the passenger side of the car where Mr. Oneal was waiting for him. Mr. Ackward yelled that he had money. Mr. Wells saw that Mr. Ackward was holding a gun. Mr. Ackward and Mr. Oneal left. In the car, Mr. Ackward told Mr. Oneal that he and Mr. Buckman had fought and that he had shot Mr. Buckman twice.

Police questioned Mr. Ackward for at least eight hours, and videotaped the entire time he was in the interview room. Over the course of the eight hours, Mr. Ackward changed his story several times. During questioning, Mr. Ackward asked to talk to his father. Although the two conversed alone, police listened to the conversation. It appeared that Mr. Ackward and his father discussed the location of the gun. When Mr. Ackward's father left the police station, police officers followed him. He proceeded to a house where he picked up something outside the house. As he was driving away, police officers stopped him. He had a black magazine clip with ammunition in it.

After Mr. Ackward's father left the police station, Mr. Ackward requested an attorney. Despite that request, the police continued the interrogation. Mr. Awkward confessed to shooting Mr. Buckman and agreed to show the police where he had hidden the gun.

-3-

The trial court suppressed the statements Mr. Ackward made after he requested an attorney. But the court declined to suppress the gun. Mr. Ackward was convicted of felony murder and attempted possession of marijuana with the intent to distribute and sentenced to life and fourteen months' imprisonment, respectively.

The Kansas Supreme Court affirmed his convictions and sentences. *Ackward*, 128 P.3d 382. In doing so, that court held that the trial court erred in admitting the gun, because it was seized in violation of Mr. Ackward's Sixth Amendment right to counsel. *Id.* at 396-97. Nonetheless, the Kansas Supreme Court determined that the error did not prejudice Mr. Awkward and was harmless because there was ample evidence of the presence of a gun during the crime and Mr. Ackward's possession of it. *Id.* at 397. The court pointed to Mr. Wells's eyewitness testimony and Mr. Ackward's statement. *Id.*

Mr. Ackward then filed his petition for a writ of habeas corpus in federal district court, challenging the Kansas Supreme Court's harmless error analysis. He argued that the Kansas Supreme Court erred in failing to apply the beyond-a-reasonable-doubt harmless-error standard set forth in *Chapman v. California*, 386 U.S. 18, 22-24 (1967). The federal district court agreed, but held that the error was harmless under *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Consequently, the district court denied habeas relief and a COA.

ANALYSIS

*Legal Standards*

Under the Antiterrorism and Effective Death Penalty Act of 1996, habeas corpus relief will not be granted on a claim adjudicated on the merits in state court unless that court's adjudication was contrary to or an unreasonable application of Supreme Court precedent or the decision was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1), (2). A state-court decision is contrary to clearly established law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

In this case, the parties agree, and the federal district court correctly concluded, that the Kansas Supreme Court applied an incorrect harmless error standard, and should have applied the *Chapman* proof-beyond-a-reasonable-doubt harmless-error standard. In other words, the court's decision was contrary to clearly establish Supreme Court precedent. *See Turrentine v. Mullin*, 390 F.3d 1181, 1190 (10th Cir. 2004). Because the Kansas Supreme Court decided this claim under an improper standard, we do not give deference to its decision. *See Revilla v. Gibson*, 283 F.3d 1203, 1220 n.14 (10th Cir. 2002).

Instead, like the district court, we consider whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623; *see Fry v. Pliler*, 551 U.S. 112, 127 S. Ct. 2321, 2328

(2007) (holding that *Brecht* provides proper standard even though state court failed to review error "for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*."). We review the district court's harmlessness conclusions under *Brecht* de novo. *See Turrentine*, 390 F.3d at 1189.

In examining the entire record, we will conclude that an error has a "substantial and injurious effect" if we are "in 'grave doubt' about the effect of the error on the jury's verdict." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "'Grave doubt' exists where the issue of harmlessness is 'so evenly balanced that [we are] in virtual equipoise as to the harmlessness of the error.'" *Id.* at 1009-10 (quoting *O'Neal*, 513 U.S. at 435). Relevant factors we may consider in our harmlessness analysis include the importance of the evidence to the government's case, whether the evidence was cumulative, whether there is other evidence corroborating or contradicting the evidence, and the strength of the government's case. *Cf. Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (listing factors to consider when conducting harmless-error analysis under *Chapman*).

*Application of Legal Standards*

Upon de novo review and after considering the entire record, we agree with the district court that admission of the gun was harmless under *Brecht*. The gun

played a minor role in the trial; the prosecutor did not emphasize the gun; and the prosecution's case against Mr. Ackward was strong.

The testimony of Mr. Wells and Mr. Oneal implicated Mr. Ackward in the murder. Both testified that Mr. Ackward and Mr. Buckman entered the apartment building, that they heard two gunshots, and that they saw Mr. Ackward run out of the apartment building after they heard the gunshots. Mr. Wells more specifically testified that within a minute of hearing the two gunshots, Mr. Ackward ran from the apartment building carrying a gun and yelling about having money. Mr. Oneal testified that Mr. Ackward told him that he shot someone he had been fighting with. When Mr. Oneal asked Mr. Ackward if he had killed Mr. Buckman, Mr. Ackward responded that he did not think so. Mr. Oneal further testified that in his statement to police, he said that Mr. Ackward told him that he pulled his gun and shot Mr. Buckman twice.

In addition to the testimony of these two witnesses, other facts suggest that admission of the gun evidence was harmless. Mr. Ackward's father obtained the gun's magazine clip immediately after meeting with Mr. Ackward, thereby suggesting that Mr. Ackward told him where to find it. There was no dispute that a gun was used to commit the murder. In one of his versions of what happened, Mr. Ackward admitted shooting Mr. Buckman, after the two had struggled over Mr. Buckman's gun. Indeed, Mr. Ackward never argued at trial that he did not kill Mr. Buckman.

Moreover, the prosecutor did not focus on the gun in opening or closing arguments. In his opening statement, the prosecutor mentioned that there were two shots in the apartment building, that Mr. Ackward ran out of the apartment building holding the gun, and that Mr. Buckman was killed by a gunshot wound. The prosecutor only briefly commented on the gun in closing argument, again mentioning that Mr. Ackward ran from the apartment building with the gun that was the murder weapon.

## CONCLUSION

While we will not dismiss the gun as having no significance to the jury, we cannot conclude that it and the emphasis placed on it by the State caused its admission to have a substantial, injurious effect on the jury's verdict. *See Brecht*, 507 U.S. at 637. Because the evidence of guilt in this case was strong, admission of the evidence concerning the gun was harmless. Accordingly, we AFFIRM the district court's judgment.

Entered for the Court

Michael R. Murphy
Circuit Judge

-8-